UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MILTON AL STEWART, Acting Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>LAZY DOG MANAGEMENT, LLC d/b/a THE OLE DOG TAVERN, CHUBBYLOVE, LLC d/b/a CHUBBY'S, CHRISTOPHER DELMONICO, and NIALL O'NEILL,<br><br>Defendants. | Civil Action No. 3:21-cv-204<br><br>February 18, 2021<br><br>**Injunctive relief sought** |

## **COMPLAINT**

This case is fundamentally about employers who unlawfully threatened employees with immigration consequences, law enforcement action, blacklisting, and termination if the employees did not "kick back" to the employers compensation that the employers agreed with the United States government to pay to those employees.

Two separate investigations by Plaintiff Milton Al Stewart, Acting Secretary of Labor, United States Department of Labor (the "Secretary"), revealed that Defendants Lazy Dog Management, LLC d/b/a The Ole Dog Tavern, ChubbyLove, LLC d/b/a Chubby's, Christopher Delmonico, and Niall O'Neill (collectively, "Defendants") owed certain of their employees back wages and liquidated damages for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "Act" or "FLSA"). In April 2017 and April 2019, Defendants entered into settlement agreements with the Secretary to pay back wages and liquidated damages to those employees whom they had not properly compensated under the FLSA. But instead of paying their employees as agreed, after each settlement with the Secretary Defendants threatened,

intimidated, and coerced employees into "kicking back" or returning to Defendants money that lawfully belonged to those workers. When one employee confronted Delmonico about the money the employee was owed, Delmonico fired him on the spot. Defendants' unlawful intimidation tactics succeeded—at least four employees returned to Defendants thousands of dollars, which the employees were entitled to under the law and which Defendants had agreed with the Secretary to pay.

The Secretary therefore seeks from this Court an order enjoining Defendants and those acting on their behalf from violating the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), through any further intimidation, threats, termination, or other adverse action against employees as a result of their protected activity. The Secretary also seeks: (1) to recover the money that Defendants unlawfully coerced their employees to repay; (2) back pay for the employee who suffered a retaliatory discharge; and (3) punitive damages for Defendants' egregious and repeated retaliation against their employees.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2.     Venue is proper in the United States District Court for the District of Connecticut because a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Parties

#### The Secretary

3.  Plaintiff Milton Al Stewart, Acting Secretary of Labor, United States Department of Labor, is vested with the authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages, and is the proper plaintiff for this action.

#### Defendant Lazy Dog Management, LLC d/b/a The Ole Dog Tavern

4.  Defendant Lazy Dog Management, LLC d/b/a The Ole Dog Tavern (the "Ole Dog") is a Connecticut limited liability company with a principal office address of 59 Beers Place, Stratford, CT 06614. The Ole Dog operates as a restaurant, located at 2505 Main Street, Stratford, CT 06615, and previously did business under the trade name of Lazy Dog Tavern.

5.  At all relevant times, the Ole Dog employed employees, including those who worked as cooks, dishwashers, and servers.

6.  At all relevant times, the Ole Dog set its employees' method and amount of pay, created policies for employee compensation, and maintained employment-related records.

7.  At all relevant times, the Ole Dog set the hours worked by its employees, supervised employees' work, and had the power to hire and fire them.

#### Defendant ChubbyLove, LLC d/b/a Chubby's

8.  Defendant ChubbyLove, LLC d/b/a Chubby's ("Chubby's") was a Connecticut-based limited liability company with an address at 3488 Fairfield Avenue, Bridgeport, CT 06605. Chubby's operated as a restaurant until 2017.

9.  At all relevant times, Chubby's employed employees, including those who worked as cooks, dishwashers, and bar staff.

10. At all relevant times, Chubby's set its employees' method and amount of pay, created policies for employee compensation, and maintained employment-related records.

11. At all relevant times, Chubby's set the hours worked by its employees, supervised employees' work, and had the power to hire and fire them.

<u>Defendant Christopher Delmonico</u>

12. Defendant Christopher Delmonico is, and at all relevant times was, the managing member and co-owner of the Ole Dog.

13. Previously, Delmonico was a member and the owner of Chubby's. Delmonico dissolved the Chubby's limited liability company on or around September 19, 2017.

14. Delmonico threatened and intimidated at least one employee of the Ole Dog to coerce them to return the compensation that they were owed under the FLSA. Delmonico's actions therefore affected the compensation that the Ole Dog's employees received.

15. Delmonico threatened and intimidated at least one employee of Chubby's to coerce them to return the compensation that they were owed under the FLSA. Delmonico's actions therefore affected the compensation that Chubby's employees received.

16. At all relevant times, Delmonico has acted directly and indirectly in the interest of the Ole Dog in relation to its employees, and therefore has been an employer of the Ole Dog's employees within the meaning of the FLSA, *see* 29 U.S.C. § 203(d).

17. At all relevant times, Delmonico has acted directly and indirectly in the interest of Chubby's in relation to its employees, and therefore has been an employer of Chubby's employees within the meaning of the FLSA, *see* 29 U.S.C. § 203(d).

18. Delmonico resides in Fairfield, CT, within the jurisdiction of this Court.

19. The claims against Delmonico in this case arise out of and are directly related to his business activities in Connecticut.

## Defendant Niall O'Neill

20. Defendant Niall O'Neill is, and at all relevant times was, a member and co-owner of the Ole Dog.

21. O'Neill threatened and intimidated at least one employee of the Ole Dog to coerce them to return the compensation that they were owed under the FLSA. O'Neill's actions therefore affected the compensation that the Ole Dog's employees received.

22. At all relevant times, O'Neill has acted directly and indirectly in the interest of the Ole Dog in relation to its employees, and therefore has been an employer of the Ole Dog's employees within the meaning of the FLSA, *see* 29 U.S.C. § 203(d).

23. O'Neill resides in Shelton, CT, within the jurisdiction of this Court.

24. The claims against O'Neill in this case arise out of and are directly related to his business activities in Connecticut.

## Defendants Are an Enterprise Covered by the FLSA

25. At all relevant times, Defendants were an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), as they engaged in related activities performed through unified operation or common control for a common business purpose.

26. From November 1, 2014 to at least November 3, 2018, Defendants employed employees in said enterprise.

27. At all relevant times, Defendants' enterprise was engaged in commerce or in the production of goods for commerce, which includes having employees handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce.

28. At all relevant times, Defendants' enterprise had an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

29. Defendants' employees therefore were employed in this enterprise engaged in commerce or in the production of goods for commerce, within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

30. In a settlement agreement dated April 5, 2017 between the Secretary and Defendants, all four Defendants agreed that they were an enterprise under Sections 3(r) and 3(s) of the FLSA, 29 U.S.C. §§ 203(r)–(s), and that the provisions of the FLSA applied to them.

31. In a settlement agreement dated April 18, 2019 between the Secretary and the Ole Dog, Delmonico, and O'Neill, those three Defendants agreed that they were an enterprise under Sections 3(r) and 3(s) of the FLSA, 29 U.S.C. §§ 203(r)–(s), and that the provisions of the FLSA applied to them.

**The Secretary's First Investigation of the Ole Dog and Chubby's**

32. In 2016, on behalf of the Secretary the Wage and Hour Division of the United States Department of Labor (the "WHD") began an investigation into the wage and hour practices of the Ole Dog, Chubby's, and the two restaurants' owners Delmonico and O'Neill (the "First Investigation").

33. The First Investigation covered the time period from November 1, 2015 to October 31, 2016, with respect to the Ole Dog.

34. The First Investigation covered the time period from November 1, 2014 to October 31, 2016, with respect to Chubby's.

35. In the course of the First Investigation, the WHD determined that Defendants had violated multiple provisions of the FLSA, including Section 6 of the Act, 29 U.S.C. § 206, relating to the minimum wage, and Section 7 of the Act, 29 U.S.C. § 207, relating to overtime compensation for employees.

36. The WHD determined that Defendants owed certain employees who worked at the Ole Dog and Chubby's back wages and liquidated damages for the time period covered by the First Investigation.

37. On or about April 5, 2017, Defendants entered into a written settlement agreement (the "First Agreement") with the Secretary to pay $66,501.82 in back wages and liquidated damages that they owed to their affected current and former employees.

38. Defendants represented to the Secretary in the First Agreement that they were "currently coming into compliance with the applicable provisions of the Act as interpreted by the Secretary, and agree[d] that [they] will comply in the future."

39. Defendants further agreed in the First Agreement that they "and any of [their] agents or anyone acting on [their] behalf will not, directly or indirectly, solicit or accept the return or refusal of any sums paid or due under this Agreement."

40. In or around 2017, the Ole Dog submitted to the WHD certifications signed by O'Neill, regarding payments made to certain employees pursuant to the First Agreement. Those certifications stated that he had paid the named employee "in full," that he had not retaliated and would not retaliate against the employee, and that he had not asked and would not "ask the employee to return all or part of" the payment.

41. In or around 2017, Chubby's submitted to the WHD certifications signed by Delmonico, regarding payments made to certain employees pursuant to the First Agreement.

Those certifications stated that he had paid the named employee "in full," that he had not retaliated and would not retaliate against the employee, and that he had not asked and would not "ask the employee to return all or part of" the payment.

42. In the First Agreement, Defendants also agreed to waive any and all defenses based on the passage of time since the signing of the agreement, in the event that they did not pay their employees as required by the agreement and the Secretary then chose to initiate legal action.

### The Secretary's Second Investigation of the Ole Dog

43. In 2018, on behalf of the Secretary the WHD began a second investigation into the wage and hour practices of the Ole Dog, Delmonico, and O'Neill (the "Second Investigation").

44. The Second Investigation covered the time period from November 1, 2016 to November 3, 2018.

45. Despite their representations to the Secretary in the First Agreement, the Ole Dog, Delmonico, and O'Neill had not come into compliance with the FLSA.

46. The WHD's Second Investigation revealed that the Ole Dog, Delmonico, and O'Neill had again violated the FLSA, including the minimum wage requirements of Section 6, 29 U.S.C. § 206, and the overtime compensation requirements of Section 7, 29 U.S.C. § 207.

47. The WHD determined that the Ole Dog, Delmonico, and O'Neill owed employees back wages and liquidated damages for the time period covered by the Second Investigation.

48. On or about April 18, 2019, the Ole Dog, Delmonico, and O'Neill entered into a second written settlement agreement (the "Second Agreement") with the Secretary to pay

$70,963.12 in back wages and liquidated damages that they owed to their affected current and former employees.

49. The Ole Dog, Delmonico, and O'Neill also represented to the Secretary in the Second Agreement that they were "currently in compliance with the applicable provisions of the Act as interpreted by the Secretary, and agree[d] that [they] will continue to comply in the future."

50. Once again, the Ole Dog, Delmonico, and O'Neill expressly agreed in the Second Agreement that they "and any of [their] agents or anyone acting on [their] behalf will not, directly or indirectly, solicit or accept the return or refusal of any sums paid or due under this Agreement."

51. In or around 2019, the Ole Dog submitted to the WHD signed certifications, regarding payments made to certain employees pursuant to the Second Agreement. Those certifications stated that the Ole Dog had paid the named employee "in full," that the Ole Dog had not retaliated and would not retaliate against the employee, and that the Ole Dog had not asked and would not "ask the employee to return all or part of" the payment.

52. In the Second Agreement, the Ole Dog, Delmonico, and O'Neill also agreed to waive any and all defenses based on the passage of time since the signing of the agreement, in the event that they did not pay their employees as required by the agreement and the Secretary then chose to initiate legal action.

**Defendants' Kickback Scheme and Unlawful Retaliation**

<u>Defendants' Retaliation Following the First Investigation</u>

53. In or around 2017, after Defendants agreed to pay affected employees the back wages and liquidated damages calculated in the Secretary's First Investigation, Defendants

threatened and intimidated employees to convince them to "kick back" or return money they were owed, in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3).

54. In or around 2017, Defendants took actions to coerce employees to kick back the back wages or liquidated damages that they were owed. Examples of Defendants' actions in this regard include the following:

    a. Delmonico drove employees José Hernández and Matthew Riley in his vehicle to People's Bank locations to cash their checks for back wages or liquidated damages. After those employees emerged from the bank with their cash, Delmonico required the employees to immediately return cash to him while they were in the bank parking lot.

    b. Delmonico threatened to blacklist Riley and prevent him from getting a job in Riley's community if he did not return thousands of dollars to Delmonico.

    c. When José Hernández confronted Delmonico about the money Defendants owed José Hernández as a result of the First Investigation and Defendants' First Agreement with the Secretary, Delmonico threatened to call the police and then fired José Hernández on the spot.

    d. Delmonico and O'Neill told José Hernández to leave the restaurant property.

55. After being fired by Delmonico, José Hernández was unemployed for approximately four to five months.

56. When José Hernández applied for new jobs at approximately 10 different restaurants, he was told by those businesses that Delmonico had been disparaging him and saying that José Hernández had betrayed Delmonico.

57. Defendants' coercive tactics were successful. In or around 2017, multiple employees returned to Defendants thousands of dollars of the compensation the employees were owed under the FLSA and which Defendants had agreed with the Secretary to pay to those employees.

<u>Retaliation by the Ole Dog, Delmonico, and O'Neill Following the Second Investigation</u>

58. In or around 2019, after the Ole Dog, Delmonico, and O'Neill agreed to pay affected employees the back wages and liquidated damages the Secretary determined they were owed as a result of the Second Investigation, the Ole Dog, Delmonico, and O'Neill threatened and intimidated employees to convince them to "kick back" or return money that they were owed, in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3).

59. In or around 2019, the Ole Dog, Delmonico, and O'Neill took actions to coerce employees to kick back the back wages or liquidated damages that they were owed. Examples of these actions include the following:

   a. After the Second Investigation, O'Neill called Edwin Hernández into the office along with another employee who acted as a translator. O'Neill threatened Edwin Hernández by telling him that if he decided to keep all of the money that was owed to him, O'Neill would report Edwin Hernández to the immigration authorities.

   b. O'Neill also said that if Edwin Hernández returned to O'Neill half of the money that he was owed, O'Neill would not contact the immigration authorities.

60. In or around September 2019, O'Neill gave Edwin Hernández two checks, totaling approximately $20,000.00 in compensation due to him under the FLSA.

61. Edwin Hernández cashed the checks at two different banks and had to wait a period of approximately 15 days for the large amounts to clear.

62. During that period, O'Neill continued to call Edwin Hernández and put pressure on him to return half of the money.

63. O'Neill also ordered the employee who had acted as a translator to ask Edwin Hernández when O'Neill would receive the kickback.

64. When Edwin Hernández's two checks cleared, he forfeited half of the money he was legally owed and paid O'Neill $10,000.00 in cash.

## **COUNT ONE**
**(Violation of the Anti-Retaliation Provision of the FLSA, 29 U.S.C. § 215(a)(3))**

65. The Secretary incorporates by reference and re-alleges all foregoing allegations in the Complaint.

66. Section 15(a)(3) prohibits retaliation against employees and former employees because they assert their rights under the FLSA. The provision prohibits, among other things, "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter [8 of the FLSA], or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3).

67. Defendants have violated Section 15(a)(3) by coercing certain of their employees, through threats and intimidation, to kick back or return compensation to which the employees were entitled under the FLSA.

68. Defendants have further violated Section 15(a)(3) by terminating at least one employee, José Hernández, because he confronted Delmonico about the money he was owed under the FLSA.

69. As a result of Defendants' retaliatory conduct, a reasonable employee would be dissuaded from engaging in activities protected under the Act, such as asserting their right to receive proper compensation or cooperating with an investigation by the Secretary into violations of the FLSA.

## COUNT TWO
**(Violations of Sections 6 & 15(a)(2) of the FLSA—Failure to Pay Minimum Wage)**

70. The Secretary incorporates by reference and re-alleges all of the foregoing allegations in this Complaint.

71. Defendants' threats and intimidation tactics have caused some employees to return to Defendants portions of the compensation they are owed.

72. Thus, some employees have not received all of the minimum wage compensation or liquidated damages that they are owed for the time period covered by the First Investigation or the time period covered by the Second Investigation.

73. Under Sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215(a)(2), Defendants are liable for the amount of minimum wage compensation and liquidated damages that is still owed to their employees for the time period covered by the First Investigation or the time period covered by the Second Investigation.

74. Defendants' actions have been willful. As set forth above, Defendants have threatened and coerced employees in an effort to make them kick back or return the compensation that those employees are owed.

## COUNT THREE
**(Violations of Sections 7 and 15(a)(2) of the Act, 29 U.S.C. §§ 207(a) and 215(a)(2))**

75. The Secretary incorporates by reference and re-alleges all foregoing allegations in the Complaint.

76. Defendants' threats and intimidation tactics have caused some employees to return to Defendants portions of the compensation they are owed.

77. Thus, some employees have not received all of the overtime compensation or liquidated damages that they are owed for the time period covered by the First Investigation or the time period covered by the Second Investigation.

78. Under Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), Defendants are liable for the amount of unpaid overtime compensation and liquidated damages that is still owed to their employees for the time period covered by the First Investigation or the time period covered by the Second Investigation.

79. Defendants' actions have been willful. As set forth above, Defendants have threatened and coerced employees in an effort to make them kick back or return the compensation that those employees are owed.

## PRAYER FOR RELIEF

WHEREFORE, cause having been shown, the Secretary respectfully prays that this Court enter judgment against Defendants and provide the following relief:

a. An order issued pursuant to Section 17 of the Act, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with Defendants, from violating the provisions of Section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3), including by seeking to have any employee kick back or return any compensation that is due to them;

b. An order issued pursuant to Section 17 of the Act, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, and employees, and those

persons in active concert or participation with Defendants, from violating Sections 6, 7, and 15(a)(2) of the Act, 29 U.S.C. §§ 206, 207, and 215(a)(2);

    c.    An order issued pursuant to Section 17 of the Act, 29 U.S.C. § 217, requiring Defendants to permit a representative of the Secretary to notify all current and former employees who received back wages and liquidated damages pursuant to the First Agreement or Second Agreement that they have the right to receive and keep the back wages and liquidated damages due to them;

    d.    An order awarding damages to Defendants' current and former employees in the amounts of the back wages and/or liquidated damages the employees "kicked back" or returned to Defendants as a result of Defendants' retaliation in violation of Section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3); or in the alternative, an order issued pursuant to Section 17 of the Act, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with Defendants, from withholding the payment of any back wages due to Defendants' employees for the time period of the First Investigation or the time period of the Second Investigation;

    e.    An order awarding back pay to compensate José Hernández, who was unlawfully terminated by Delmonico in violation of Section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3);

    f.    An order awarding punitive damages for Defendants' retaliation against certain current and former employees in violation of Section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3);

    g.    An order awarding the Secretary all costs of this action; and

    h.    An order awarding the Secretary with any other relief that the Court deems necessary and appropriate.

Date: February 18, 2021

Elena S. Goldstein
Deputy Solicitor

Maia S. Fisher
Regional Solicitor

Mark A. Pedulla
Wage and Hour Counsel

/s/ Emily V. Wilkinson
Emily V. Wilkinson
Trial Attorney
wilkinson.emily.v@dol.gov
Massachusetts BBO No. 699512

U.S. Department of Labor
Attorneys for Plaintiff

Post Office Address:
U.S. Department of Labor
Office of the Solicitor
John F. Kennedy Federal Building
Room E-375
Boston, MA 02203
TEL: (617) 565-2500
FAX: (617) 565-2142